# United States District Court

SOUTHERN **DISTRICT OF** FLORIDA

FILED by D.C.
FEB 7 2000
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

UNITED STATES OF AMERICA

V.

DERRICK ANDERSON,
RICHARDO JAMES
~~GUSTAVO QUIROZ~~ 717
DAIREL WORRELL

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 00-4025-SNOW

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about ___February 4, 2000___ in __Broward__ county, in the __Southern__ District of __Florida__ defendant(s) did, (Track Statutory Language of Offense) knowingly and intentionally conspire to possess with intent to distribute cocaine;

in violation of Title __21__ United States Code, Section(s) __846__

I further state that I am a(n) __DEA Special Agent__ and that this complaint is based on the following facts:
Official Title

Please see attached affidavit.

Continued on the attached and made a part hereof:   [x] Yes  [ ] No

Signature of Complainant
TROY MIHOK, SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Sworn to before me, and subscribed in my presence,

Feb. 6, 2000                                      at  Fort Lauderdale, Florida
Date                                                  City and State

LURANA S. SNOW
CHIEF UNITED STATES MAGISTRATE JUDGE         Lurana S. Snow
Name and Title of Judicial Officer            Signature of Judicial Officer



AFFIDAVIT

I, Troy Mihok, being duly sworn do hereby depose and state:

1. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed for the past three and a half years. Prior to my employment with the DEA, I was employed as a private investigator for two years. My responsibilities include the investigation of violations of the Federal Statutes relating to narcotics. I have received extensive training in proper investigative techniques relating to Federal narcotic offenses. The information contained in this affidavit is based upon my personal knowledge as well as information related to me from other law enforcement personnel. This affidavit summarizes, but does not detail every fact which is known to your affiant regarding this case.

2. On February 3, 2000, your affiant was contacted by a confidential source (CS) whom stated he/she had recently been contacted by another individual who stated that Derrick ANDERSON was in need of a contact in the Fort Lauderdale, Florida area who could supply him with eight kilograms of cocaine. On the same date, the CS furnished your affiant with a telephone number where ANDERSON was waiting to be contacted by a person to sell him (ANDERSON) eight kilograms of cocaine. The telephone number

provided to your affiant was (954) 720-5288. Your affiant has learned that the preceding telephone number's service address is 7615 SW 10th Street, Apartment C, North Lauderdale, Florida. Your affiant also learned, through public information records, that the listed occupants of the listed address are Everald Anderson and Yvonne Anderson. The CS advised your affiant that ANDERSON was attempting to purchase eight kilograms of cocaine on the behalf of two other individuals who were not from the Fort Lauderdale, Florida area.

3. On February 4, 2000, at approximately 12:35PM, the CS made a controlled phone call to ANDERSON. ANDERSON stated he had not talked to the other people yet, and ANDERSON requested the CS to call him (ANDERSON) back in 30 minutes. On the same date, at approximately 12:50PM, the CS telephonically contacted ANDERSON. ANDERSON stated the purchasers of the cocaine wanted to purchase four kilograms of cocaine today and they wanted four more kilograms of cocaine on Sunday or Monday (February 6th and 7th, 2000). The CS and ANDERSON discussed the price that would be charged per kilogram of cocaine. ANDERSON stated he would meet the CS at approximately 2:30PM near the FunEscape business, which is located at the intersection of Andrews Avenue and Cypress Creek Road. At approximately 3:10PM, the CS met with ANDERSON in front of the Just For Feet shoe store located at the intersection of Andrews Avenue and Cypress Creek Road. The CS and ANDERSON agreed to a price of $18,000.00 per kilogram of cocaine.

ANDERSON led the CS to a parked car, which was occupied by Dairel WORRELL and Richardo JAMES. The CS was introduced to JAMES and WORRELL, and they discussed the logistics of a four kilogram cocaine purchase between the CS and themselves (JAMES, WORRELL, and ANDERSON). JAMES and WORRELL gave the CS phone numbers where they could be reached. The CS, JAMES, WORRELL, and ANDERSON agreed to meet later in the afternoon to consummate the four kilogram transaction. On the same date, at approximately 6:15PM, the CS called one of the phone numbers which he/she had received earlier in the day. The CS informed WORRELL that he/she was ready to do the deal and he/she would be at the Marriott Hotel on Cypress Creek Road. During the same conversation, JAMES got on the phone and received directions to the Marriott Hotel. JAMES stated they were eating and they would be there soon. At approximately 7:35PM, ANDERSON and WORRELL arrived at the Marriott Hotel located at 2440 NW 62ns Street, Fort Lauderdale, Florida. WORRELL informed the CS that he wanted to purchase three kilograms of cocaine now because an associate of his had taken the money for the fourth kilogram to Miami. The CS requested to see the money for the transaction and WORRELL stated it was on the way. A few minutes later, JAMES arrived at the Marriott Hotel and showed the CS a bag of U.S. Currency. The CS asked for ANDERSON to come with him/her to review the kilograms of cocaine. At approximately 7:40PM, JAMES, WORRELL, and ANDERSON were taken into custody by Law Enforcement Officers.

4. After being given his Miranda Rights, JAMES stated he arrived in Fort Lauderdale, Florida on February 2, 2000, and he drove to Florida with WORRELL. JAMES stated that WORRELL asked him to go to Florida because he (JAMES) knew the area. JAMES stated WORRELL told him they were going to Florida to pick up something, and JAMES stated he knew it was something illegal. JAMES stated he picked up WORRELL at a bus station in Richmond, Virginia, and WORRELL had come on a bus from New York. JAMES stated he never saw the bag of money until just prior to the transaction at the hotel. JAMES stated he unfolded the money and put it in the bag at WORRELL'S direction just prior to the hotel meeting.

FURTHER YOUR AFFIANT SAYETH NAUGHT

```
                                    _____
                                    Troy Mihok
                                    Special Agent
                                    Drug Enforcement Administration
```

Sworn and subscribed to before me this
__6__ Day of February, 2000

*Luranna S. Snow*
Luranna S. Snow
UNITED STATES MAGISTRATE JUDGE

4. After being given his Miranda Rights, JAMES stated he arrived in Fort Lauderdale, Florida on February 2, 2000, and he drove to Florida with WORRELL. JAMES stated that WORRELL asked him to go to Florida because he (JAMES) knew the area. JAMES stated WORRELL told him they were going to Florida to pick up something, and JAMES stated he knew it was something illegal. JAMES stated he picked up WORRELL at a bus station in Richmond, Virginia, and WORRELL had come on a bus from New York. JAMES stated he never saw the bag of money until just prior to the transaction at the hotel. JAMES stated he unfolded the money and put it in the bag at WORRELL'S direction just prior to the hotel meeting.

FURTHER YOUR AFFIANT SAYETH NAUGHT

_____
Troy Mihok
Special Agent
Drug Enforcement Administration

Sworn and subscribed to before me this
_____ Day of February, 2000

_____
Luranna S. Snow
UNITED STATES MAGISTRATE JUDGE